# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONTE A ROSE, JR.,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ALEX M. AZAR II,** *et al.*, <br><br> Defendants. | Civil Action No. 1:19-cv-2848 (JEB) |

## FEDERAL AND STATE DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION FOR A STAY PENDING RESOLUTION OF D.C. CIRCUIT APPEALS

Plaintiffs' response to the federal and state defendants' joint motion is more notable for what it does not dispute than for what it contests. Plaintiffs do not try to deny that the issues before the D.C. Circuit in *Stewart* and *Gresham* squarely overlap with the issues before this Court, nor do they attempt to dispute that any ruling by the D.C. Circuit will impact, if not control entirely, the outcome here. Just the opposite: plaintiffs themselves state that the approval of Indiana's project is "substantially similar" to the approvals under review by the D.C. Circuit. Pls.' Reply 1.

Plaintiffs likewise do not dispute that the only new components of the Healthy Indiana Plan ("HIP") they challenge—the community engagement requirement and redetermination lockouts—will not cause them harm during the pendency of this lawsuit. As explained in defendants' joint motion, the redetermination lockout has been paused since October 2018, and the state recently announced that it will not suspend the benefits of any Medicaid beneficiary for failure to comply with the work and community engagement requirement until this lawsuit is resolved. Defs.' Mot. 4–7, ECF No. 18; *see also* Ind. Family & Soc. Servs. Admin. News Release, "Pending resolution of federal lawsuit, FSSA will temporarily suspend Gateway to Work reporting requirements," (Oct. 31, 2019) ECF No. 18-2; HIP Monitoring Plan, Q4 Quarterly Report 5, ECF No. 18-3.

Nor do plaintiffs dispute that a stay will preserve the status quo in Indiana. The preexisting components of HIP—including premiums, the waiver of retroactive eligibility, and limitations on non-emergency medical transportation ("NEMT")—have been in place in the State in some form for years, without prior legal challenge. Plaintiffs do not contest that these components are longstanding, or that moving forward with the litigation would only upend this existing state of play.

Plaintiffs even go so far as to agree that a stay could promote judicial economy, albeit "theoretically." Pls.' Reply 1. Of course, whenever any court stays one case pending the outcome of another, the benefits to judicial economy are only "theoretical." The other court could always issue a ruling the very next day, or rule on an unexpected ground, and a stay in the first case will have made

no difference. What matters is whether a stay is *likely* to promote judicial economy, and in circumstances where that is the case, courts routinely grant stays of proceedings. *See, e.g.*, *Fonville v. D.C.*, 766 F. Supp. 2d 171, 173 (D.D.C. 2011) (granting stay where rulings on legal issues in other cases were "*likely* to be extremely persuasive to, if not binding upon" the district court) (emphasis added); *Fairview Hosp. v. Leavitt*, 2007 WL 1521233, at *2 (D.D.C. May 22, 2007) (granting stay where movant argued that ruling in other cases would "*likely* obviate the need for further proceedings . . .") (emphasis added). Here, plaintiffs do not contest that proceeding with this case now would *likely* result in only further litigation, as any briefing or rulings—which would take place in the next six weeks per plaintiffs' request—would soon be overtaken by the D.C. Circuit's decision.

Rather than contest any of the above, plaintiffs argue that an immediate ruling is necessary in light of purported harms to Medicaid beneficiaries from preexisting components of Indiana's project, such as having to pay premiums and facing potential penalties for failure to do so. Pls.' Reply 2–3. In other words, plaintiffs assert that their challenge to the premium requirement, waivers of retroactive eligibility, and NEMT, which existed in some form since even before Indiana expanded Medicaid, suddenly warrants judicial resolution *now*. But even if these components could be said to harm plaintiffs in some way, the assertion that such harm is of sufficient significance and urgency to justify an expedited ruling runs into the teeth of plaintiffs' own actions. For years, plaintiffs left these very components unchallenged. Presumably, the harms they claim to face now are no different from what they would have faced for this lengthy period. Plaintiffs cannot sit on their hands for years and then ask this Court to jump at a moment's notice. Worse, plaintiffs still have not provided *any explanation* for their delay in seeking legal recourse, nor have they explained what is now different to justify upsetting the status quo before the D.C. Circuit rules in materially similar cases. At bottom, whatever harms plaintiffs may face from the preexisting components of HIP, plaintiffs' own actions demonstrate those harms should not be given controlling weight.

In fact, considering (1) the timing of this lawsuit and (2) plaintiffs' request for full briefing and a ruling by December 31, 2019 (the previous start date for disenrollment based on noncompliance with the work and community engagement requirement), the only reasonable inference to draw is that the real object of this lawsuit is to challenge the work and community engagement requirement. But since the State has voluntarily suspended that component, the Court should not now credit plaintiffs' last-ditch effort to refocus their challenge and press ahead with litigation, when controlling guidance is expected shortly. Indeed, it has now been nearly a month since the D.C. Circuit argument in *Stewart* and *Gresham*, and the federal defendants have requested an expedited decision. While plaintiffs claim that "many months could pass" before those appeals are resolved, Pls.' Reply 4, that is nothing compared to the years plaintiffs chose to wait to challenge HIP's preexisting components.

Plaintiffs further complain that Indiana's decision to suspend disenrollment of HIP participants for failure to comply with the work and community engagement requirement "could cause confusion" Pls.' Reply 4, and that "beneficiaries are *already* confused," *id.* at 6, necessitating an expedited ruling on plaintiffs' claims. But this Court should not credit plaintiffs' illogical argument that maintaining the status quo will cause more confusion; Indiana's voluntary suspension of disenrollment for non-compliance with the work and community engagement requirement means that beneficiaries are simply encouraged to continue utilizing the Gateway to Work program and available community engagement resources, and are otherwise dealing with the same requirements that have been in place in some form for years. Further, plaintiffs fail to articulate how suspending penalties for failure to complete Medicaid redetermination paperwork will lead to additional confusion amongst beneficiaries. Finally, Indiana's Family and Social Services Administration ("FSSA") has prepared clear guidance for how it is implementing its suspension of the work and community engagement requirements. The FSSA website, for example, clearly explains that "the state is not currently enforcing benefit suspensions and will not until after a federal lawsuit is resolved. Before the program is

3

reinitiated, members would receive substantial advance notice regarding the timeline." *See* Ind. Family and Social Servs. Admin., *Learn about Gateway to Work*, https://www.in.gov/fssa/hip/2592.htm. Moreover, FSSA has circulated additional guidance to managed care entities in the state and within days plans to make the same guidance available to the public. *See* Gateway to Work FAQ, attached as Exhibit 1.

Finally, plaintiffs downplay as insignificant the harms to the State from proceeding with this litigation because defendants expressed them succinctly. *See* Pls.' Reply 5. But the State has a valid interest in continuing to collect information on the components of the demonstration that remain in place. The State also has a valid interest in maintaining stability of the existing program. And plaintiffs offer no cogent explanation for why proceeding with this lawsuit—at the risk of a forthcoming D.C. Circuit decision that will contradict this Court's decision—would not potentially result in additional confusion for defendants and for Indiana's Medicaid beneficiaries.

For the foregoing reasons, and for the reasons explained in defendants' moving brief, this Court should stay this litigation pending the D.C. Circuit's issuance of a mandate in the *Stewart* and *Gresham* appeals. In the alternative, defendants request that this court allow the federal defendants to produce the administrative record by November 21, 2019, and thereafter allow the parties to agree upon and jointly propose a briefing schedule that hews to the normal course of litigation.

Dated: November 11, 2019      JOSEPH H. HUNT
                              Assistant Attorney General

                              JAMES M. BURNHAM
                              Deputy Assistant Attorney General

                              MICHELLE BENNETT
                              Assistant Branch Director

                              */s/ Matthew Skurnik*
                              MATTHEW SKURNIK (NY 5553896)
                              VINITA B. ANDRAPALLIYAL
                              Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8188
Email: Matthew.Skurnik@usdoj.gov

*Counsel for the Federal Defendants*


/s *Thomas M. Fisher*
Thomas M. Fisher
Solicitor General
Kian J. Hudson
Deputy Solicitor General

Office of the Indiana Attorney General
302 W. Washington St.
Indiana Government Center South, 5th Floor
Indianapolis, IN 46204-2770
Phone:  (317) 232-6255
Fax: (317) 232-7979
Email: Tom.Fisher@atg.in.gov
Kian.Hudson@atg.in.gov

Caroline M. Brown
Philip J. Peisch
Brown & Peisch PLLC
1233 20th St. NW, Suite 505
Washington, D.C. 20036
Phone: (202) 499-4258
Email: cbrown@brownandpeisch.com
            ppeisch@brownandpeisch.com

*Counsel for Indiana Family and Social Services Administration*