# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTE A. ROSE, JR., *et al.*, | ) |
| | ) |
| Plaintiffs. | ) |
| | ) |
| v. | ) |
| | ) No. 1:19-cv-02848-JEB |
| XAVIER BECERRA, in his official capacity as | ) |
| Secretary of Health and Human Services, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION'S MOTION FOR STAY PENDING APPEAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... i

INTRODUCTION ...........................................................................................................................1

STANDARD OF REVIEW .............................................................................................................2

ARGUMENT ...................................................................................................................................3

I.      Indiana Is Unlikely To Succeed On The Merits ...................................................................3

          A.  The District Court Correctly Analyzed Article III Standing .........................................3

          B.  The Court Correctly Concluded That The Approval Violated The APA ......................4

          C.  The District Court Did Not Abuse Its Discretion In Vacating The
              2020 Approval ................................................................................................................8

II.     The Remaining Stay Factors Do Not Favor A Stay............................................................11

III.    Plaintiffs Would Not Oppose A Limited Stay That Preserves An Imperfect
         Status Quo ..........................................................................................................................12

CONCLUSION..............................................................................................................................13

# TABLE OF AUTHORITIES[*]

**CASES**

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993) ...................... 8

*Athenex Inc. v. Azar*, No. 19-CV-00603, 2019 WL 4316139 (D.D.C. Sept. 6, 2019)................... 11

*Campaign Legal Ctr. v. FEC*, No. 19-2336, 2023 WL 6608997 (D.D.C. Feb. 1, 2023).............. 11

*Citizens for Resp. & Ethics in Wash. v. Fed. Energy Comm'n*, 904 F.3d 1014 (D.C. Cir. 2018).... 2

*Comcast Corp. v. FCC*, 579 F.3d 1 (D.C. Cir. 2009) ................................................................... 8

*Ctr. for Biological Diversity v. Regan*, No. CV 21-119, 2024 WL 1740078
    (D.D.C. Apr. 23, 2024) ............................................................................................................ 2

*Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972 (D.C. Cir. 1985)................................. 2, 11

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288 (D.C. Cir. 2009) ........................................ 3

*Georgia v. Brooks-LaSure*, No. 2:22-CV-6, 2022 WL 3581859 (S.D. Ga. Aug. 19, 2022) .......... 4

*Gresham v. Azar*, 950 F.3d 93 (D.C. Cir. 2020) .................................................................. 1, 7, 8

*Humane Soc'y of U.S. v. Johanns*, No. 06-265, 2007 WL 1120404 (D.D.C. Apr. 13, 2007) ...... 11

*In re Application of Comm. on Judiciary U.S. House of Representatives for an Ord. Authorizing Release of Certain Grand Jury Materials*, 414 F. Supp. 3d 1 (D.D.C. 2019)............................ 2

*Judicial Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.,* 230 F. Supp. 2d 12 (D.D.C. 2002).............. 2

*Long Island Power Auth. v. Fed. Energy Regul. Comm'n*, 27 F.4th 705 (D.C. Cir. 2022) ............ 8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012)...................................................... 6, 7

*Nken v. Holder*, 556 U.S. 418 (2009).............................................................................................. 2

*Pharm. Rsch. and Mfrs. of America v. Thompson*, 362 F.3d 817
    (D.C. Cir. 2004)........................................................................................................................ 7

*Shays v. FEC*, 340 F. Supp. 2d 39 (D.D.C. 2004) ....................................................................... 12

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011) .......................................................................... 3

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032 (D.C. Cir. 2021) ......... 8

\**Stewart v. Azar*, 313 F. Supp. 2d 237 (D.D.C. 2018) ................................................................. 7

\**Stewart v. Azar*, 366 F. Supp. 3d 125 (D.D.C. 2019) ........................................................ 5, 6, 7

*Summers v. Howard Univ.,* Civ. A. No. 02–7069, 2002 WL 31269623
 (D.C. Cir. Oct. 10, 2002) ........................................................................................................ 2

*W. Flagler Assocs. v. Haaland*, No. 21-cv-2192 (DLF), 2021 WL 9031913
 (D.D.C. Nov. 24, 2021) ........................................................................................................ 12

**STATUTES**

42 U.S.C. § 1396a(a)(10)(A)(i)(VIII) .......................................................................................... 7

**REGULATIONS**

42 C.F.R. § 430.12(c)(1)(i) ........................................................................................................... 9

42 C.F.R. § 430.16(a) ................................................................................................................... 9

42 C.F.R. § 430.20(b)(1) .............................................................................................................. 9

42 C.F.R. § 430.20(b)(3) .............................................................................................................. 9

**OTHER AUTHORITIES**

Letter from Cindy Mann, Dir., Ctr. for Medicaid & CHIP Servs., to Debra F. Minott,
 Sec'y, Ind. Fam. & Soc. Servs. Admin. (Sept. 3, 2013) ........................................................ 5

Letter from Marilyn Tavenner, Adm'r. Ctrs. for Medicare & Medicaid Servs., to Joseph Moser,
 Medicaid Dir., Ind. Fam. & Soc. Servs. Admin. (Jan. 27, 2015),
 https://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-
 Topics/Waivers/1115/downloads/in/Healthy-Indiana-Plan-2/in-healthy-indiana-plan-
 support-20-appvl-01272015.pdf ............................................................................................ 5

Medicaid Section 1115 Eligibility and Coverage Demonstrations Monitoring Report – Part B
 Version 2.0 Indiana Healthy Indiana Plan, https://www.medicaid.gov/medicaid/section-
 1115-demonstrations/downloads/in-healthy-indiana-plan-hip-dy-annul-rprt.pdf ............ 13

State Plan Amendment IN-15-0001-MM1, https://www.medicaid.gov/State-resource-
 center/Medicaid-State-Plan-Amendments/Downloads/IN/IN-15-0001-MM1.pdf ............. 5

State Plan Amendment 15-0002-MM2, https://www.medicaid.gov/State-resource-center/Medicaid-State-Plan-Amendments/Downloads/IN/IN-15-0002-MM2.pdf ............. 9

State Plan Amendment 15-0003-MM3, https://www.medicaid.gov/State-resource-center/Medicaid-State-Plan-Amendments/Downloads/IN/IN-15-003-MM3.pdf ............... 9

**INTRODUCTION**

In 2020, the Secretary granted Indiana a ten-year approval for a section 1115 project without sufficiently considering that project's demonstrated negative impact on providing health coverage for those who cannot afford it—the core purpose of the Medicaid Act. With care, this Court concluded that this approval violated the Administrative Procedure Act and vacated and remanded the approval to the Secretary. Indiana has not met its burden in seeking a stay of this Court's decision. Arguing that it is likely to succeed on the merits, the State simply rehashes arguments that the Court has already resoundingly rejected, and its attempt to distinguish the D.C. Circuit Court of Appeals' decision in *Gresham* is unconvincing.

As for the remaining stay factors, Indiana primarily argues that a stay will protect Medicaid beneficiaries—without it, Indiana alleges it will be "forced" to move beneficiaries from the HIP Plus benefit package to HIP Basic. Mem. Intervenor-Def. Ind. Fam. & Soc. Servs. Admin. Supp. Mot. Admin. Stay & Stay Pending Appeal, 1, 12, ECF No. 74 ("Ind. Br."). But neither federal nor state law requires that result. Any reduction in coverage in response to the Court's decision would be self-imposed, and a self-imposed consequence cannot justify a stay.

Further, there is no clear and immediate need for a stay to prevent irreparable harm to the State. Indiana has indicated that even without a stay, it "plans to continue to pause collection of POWER Account contributions." Ind. Br. at 13 (noting Indiana may change its mind and resume premiums after giving Plaintiffs and this Court six-weeks' notice of its intention to do so). In addition, Indiana states that managed care plans are currently providing NEMT to expansion population enrollees and that the waiver of retroactive coverage will take at least 12 months from now to reverse. *Id*. at 13-14. To be sure, the State will need to make changes to its operations to implement the Court's order, but the onus of these changes does not meet the standard for a stay.

1

Indiana's motion should be denied. That said, Plaintiffs recognize that over the past four years, an imperfect status quo has emerged—premiums have not been in effect, all beneficiaries have received HIP Plus benefits, and managed care plans are including NEMT coverage. While the retroactive coverage and NEMT waivers harm low-income individuals and undermine coverage, Plaintiffs would not oppose a limited stay that preserves the status quo.

## STANDARD OF REVIEW

A stay pending appeal is an "extraordinary remedy." *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985). In deciding whether to grant a stay, courts consider four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted); *see also Judicial Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.,* 230 F. Supp. 2d 12, 14 (D.D.C. 2002) (quoting *Summers v. Howard Univ.,* Civ. A. No. 02–7069, 2002 WL 31269623 (D.C. Cir. Oct. 10, 2002) (per curiam) (stating that standards for a stay pending appeal are "stringent").

As this Court has recognized, whether courts may still use a "sliding scale" approach in analyzing these four factors or whether establishing a likelihood of success on the merits is "an independent, free-standing requirement" is the subject of debate. *Ctr. for Biological Diversity v. Regan*, No. CV 21-119, 2024 WL 1740078, at *2 (D.D.C. Apr. 23, 2024); *see also In re Application of Comm. on Judiciary U.S. House of Representatives for an Ord. Authorizing Release of Certain Grand Jury Materials*, 414 F. Supp. 3d 1, 2–3 (D.D.C. 2019) (explaining that "[t]he D.C. Circuit has further emphasized the importance of the first factor, stating that 'show[ing] little prospect of success' on appeal is 'an arguably fatal flaw for a stay application.'") (quoting *Citizens for Resp.*

2

*& Ethics in Wash. v. Fed. Energy Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam). But when courts in this circuit do consider granting a stay where there is a lower likelihood of success on the merits, they will only do so when the motion raises "a serious legal question," *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011); "the movant makes a very strong showing of irreparable harm[;] and there is no substantial harm to the nonmovant." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

## ARGUMENT

### I.  Indiana Is Unlikely To Succeed On The Merits.

#### A.  The District Court Correctly Analyzed Article III Standing.

There is no reason to question this Court's determination that Plaintiffs have standing, as Federal Defendants conceded. Mem. Opin. (June, 27, 2024), ECF No. 68 at 23. The Court explained that the 2020 approval caused Plaintiffs a financial injury, which "falls in the heartland of Article III standing." *Id.* And "even if it were true that at least one Plaintiff must establish that she is likely to lose her Medicaid entirely if she fails to pay premiums," Plaintiff Emily Rames has done so. *Id.* at 24.

Indiana argues that Ms. Rames could not establish redressability because without the project in place, she would not have access to HIP Plus benefits. However, as described below, nothing in the state plan (or state law) mandates that, without the 2020 approval, the State must move beneficiaries to HIP Basic.

Also, under the 2020 approval, Ms. Rames faced a dilemma: manage to pay monthly premiums (which would be a financial hardship for her) and receive HIP Plus benefits, or fail to pay and receive no benefits at all. Thus, while Indiana emphasizes Ms. Rames' plan to use HIP Plus vision benefits in the future, it ignores her reliance on Medicaid coverage for her primary and

3

other health care needs. *See* Ex. C to Plfs. Mot. Summ. J. (Rames Decl.), ¶¶ 7-8, ECF. No. 54-4. Ms. Rames does not solely "desire[] to keep" the "enhanced" benefits specific to HIP Plus. *Cf.* Ind. Br. at 9. She seeks to protect her health coverage writ large, and it was the 2020 approval that required her to pay premiums to maintain any coverage at all. Vacatur redresses that injury.

There are similar problems with Indiana's attempt to distinguish this case from earlier section 1115 cases based on the timing of its Medicaid expansion *vis-a-vis* the 2020 approval. The 2020 approval risks Medicaid coverage that Plaintiffs *currently have*, no different from the plaintiffs in those other cases. Kentucky threatened to undo its Medicaid expansion, just as Indiana does now. Mem. Opin. at 25-26. In both cases, Plaintiffs "would remain Medicaid eligible even if the Secretary's [] approval [were] vacated, unless and until the State [took] additional action to terminate their coverage." *Id.* at. 27.

Finally, Indiana's assertion that "there is a mismatch between the Court's standing and merits analysis" has no merit. Ind. Br. at 9. While it is true that the Court did not "consider Plaintiffs' myriad other reasons why the 2020 approval was unlawful," there was no need for it do so. Mem. Opin. at 3. The Court granted summary judgment to Plaintiffs on Count One, that the 2020 approval was arbitrary and capricious in violation of the Administrative Procedure Act, and accordingly, vacated the approval. Plaintiffs' injury results from the unlawful approval of the 2020 extension, not a specific legal argument as to why that approval was unlawful.

**B.      The Court Correctly Concluded That The Approval Violated The APA.**

Indiana's request for a stay rests heavily on the argument that the D.C. Circuit Court of Appeals will agree with one out-of-circuit decision, *Georgia v. Brooks-LaSure*, No. 2:22-CV-6, 2022 WL 3581859 (S.D. Ga. Aug. 19, 2022), as opposed to the multiple decisions of this Court that have come to the opposite conclusion. Specifically, Indiana argues that this Court has applied

4

the incorrect baseline when deciding whether the Secretary appropriately considered the project's effect on Medicaid coverage. According to Indiana, the correct baseline varies by state, and for Indiana, is "pre-expansion"—presumably meaning after Indiana had stopped providing coverage for otherwise ineligible adults with incomes between 100% and 200% of FPL, and after Governor Pence had informed the Secretary that Indiana would extend Medicaid to the entire expansion group (incomes up to 133% of FPL) only if it could impose selected restrictions on their coverage.[1] Ind. Br. at 3-4. That cannot be correct. As this Court concluded, "the text of the statute" dictates the "baseline" by which the Secretary must "evaluate the project." Mem. Opin. at 45. "The structure of the waiver provision assumes the implementation of the Act." *Id.*; *Stewart v. Azar*, 366 F. Supp. 3d 125, 154 (D.D.C. 2019) ("*Stewart II*") (noting that section 1115 only gives the Secretary authority to waive compliance with certain provisions of the Medicaid Act to the extent and for the period necessary to carry out an experimental project, and those limitations "would make little sense . . . where the relevant consideration was not full compliance with the Act's requirements"). In other words, the baseline does not depend on what a state would have done— or will attempt to do—with respect to coverage of the expansion population without its requested

---

[1] From 2008 through 2012, Indiana's section 1115 project covered certain adults who, at the time, were not otherwise eligible for Medicaid or Medicare with incomes up to 200% of FPL. *See* Ex. B. to Supp. Compl. (2008 HIP STCs), 9, ECF No. 50-1. In late 2013, CMS gave Indiana permission to reduce the income eligibility limit to 100% of FPL, effective January 1, 2014. Letter from Cindy Mann, Dir., Ctr. for Medicaid & CHIP Servs., to Debra F. Minott, Sec'y, Ind. Fam. & Soc. Servs. Admin. (Sept. 3, 2013). Effective February 1, 2015, Indiana covered the entire expansion population (adults with incomes up to 133% of FPL). State Plan Amendment IN-15-0001-MM1, https://www.medicaid.gov/State-resource-center/Medicaid-State-Plan-Amendments/Downloads/IN/IN-15-0001-MM1.pdf; *see also* Letter from Marilyn Tavenner, Adm'r. Ctrs. for Medicare & Medicaid Servs., to Joseph Moser, Medicaid Dir., Ind. Fam. & Soc. Servs. Admin. (Jan. 27, 2015), https://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Waivers/1115/downloads/in/Healthy-Indiana-Plan-2/in-healthy-indiana-plan-support-20-appvl-01272015.pdf (approving HIP 2.0 effective February 1, 2015).

waivers in place. The same baseline, compliance with the statute, applies to all section 1115 projects, whether they pertain to the expansion population or any other population described in the Medicaid Act.

Thus, despite its argument to the contrary, *see* Ind.Br. at 4, Indiana's baseline theory "is utterly unreasonable in its breadth." *Stewart II*, 366 F Supp. 3d at 154 (internal quotations omitted). The entire Medicaid program is optional for states. Taken to its logical conclusion, the theory would mean that, when a state threatens do away with Medicaid "if the Secretary does not approve whatever waiver of whatever Medicaid requirements they wish to obtain," the state's waiver application would be approvable "because any waiver would be coverage promoting compared to a world in which the state offers no coverage at all." *Id*. A state could transform a coverage-reducing project to a coverage-promoting one by terminating its Medicaid program one day and proposing to reinstate coverage—with its requested waivers—on the next. That cannot be what Congress intended when it added section 1115. Simply put, the Medicaid Act does not "leave[] the Secretary so unconstrained, nor . . . the states . . . so armed to refashion the program Congress designed in any way they chose." *Id.* at 131; *see id*. at 153 (noting that the state's interpretation would transform Medicaid into "an *a la carte* exercise, picking and choosing which of Congress's mandates it wishes to implement").[2]

Indiana also cites *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) ("*NFIB*") to support its argument. Ind. Br. at 5. However, as the Court pointed out

---

[2] Indiana also argues that, even if the baseline is "traditional Medicaid," Ind. Br. at 5, the Secretary adequately concluded that, on balance, the project promotes coverage. Ind. Br. at 5-6. For the reasons this Court articulated, he did not. *See* Mem. Opin. at 40-43. Similarly, the Court correctly determined that the Secretary neither reasonably concluded that the project would further fiscal sustainability nor "compare[d] the benefit of savings to the consequences for coverage." *Id.* at 54 (quoting *Stewart II*, 366 F. Supp. 3d at 150). *Cf.* Ind. Br. at 7-8.

"[n]othing in NFIB sanctions" Indiana's desired prerogative. Mem. Opin. at 44. *NFIB* held that requiring states to take up coverage of the adult group would be unconstitutionally coercive because states did not have notice of such a coverage requirement when they first decided to enter the Medicaid program. The Court prohibited the Secretary from withholding existing Medicaid funding from a state refusing to take up the expansion. 567 U.S. at 585. "That fully remedies the constitutional violation . . . identified." *Id*. at 586. Indeed, the adult population group continues to be described in the Medicaid Act as a mandatory coverage group. *See* 42 U.S.C. § 1396a(a)(10)(A)(i)(VIII). Thus, when a state elects to cover individuals described in section VIII, the Secretary "must start with the presumption that the expansion group is on par with other protected populations." *Stewart v. Azar*, 313 F. Supp. 3d 237, 269 (D.D.C. 2018).

Finally, Indiana relies on *Pharmaceutical Research and Manufacturers of America v. Thompson*, 362 F.3d 817 (D.C. Cir. 2004), to support alternative Medicaid Act objectives, particularly improving health. Ind. Br. at 6-7. *Thompson* involved a challenge to a state plan amendment, not a section 1115 experimental project. Unlike Indiana's section 1115 project, the state plan amendment did not trigger reductions in coverage. Rather, it only required beneficiaries to receive prior authorization to access coverage for certain prescription drugs. There, "[t]he undisputed evidence establishe[d] that the Initiative . . . afford[ed] Medicaid beneficiaries reasonable and prompt access to those drugs subject to prior authorization." *Thompson*, 362 F.3d at 826. Thus, the decision is not at odds with this Court's reasoning. *See Stewart II*, 366 F. Supp. 3d at 151-52. Finally, the circuit court is much more likely to rely on its previous reasoning regarding section 1115. *See Gresham v. Azar*, 950 F.3d 93, 99 (D.C. Cir. 2020) ("The district court is indisputably correct that the principal objective of Medicaid is providing health care coverage."), *vacated as moot*, 142 S. Ct. 1665 (2022); *Id*. at 101 (noting that alternative objectives that "point

to better health outcomes as the objective of Medicaid . . . lack[] textual support. Indeed, the statute makes no mention of that objective.").

### C. The District Court Did Not Abuse Its Discretion In Vacating The 2020 Approval.

Vacatur is the normal remedy for an APA violation. *See Long Island Power Auth. v. Fed. Energy Regul. Comm'n*, 27 F.4th 705, 717 (D.C. Cir. 2022). Courts have discretion to decline to follow the normal remedy depending on "'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change.'" *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993) (citation omitted). The Court did not abuse its discretion in concluding that the factors supported vacating the 2020 approval. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021) (citation omitted) (articulating the standard of review on appeal).

Indiana claims that the first *Allied-Signal* factor weighs in its favor because the Court did not "rule out that 'HHS could indeed rehabilitate the approval on remand.'" Ind. Br. at 10 (citing Mem. Opin. at 58). But that is not the standard. To find that the first factor weighs in favor of vacatur, the court need only conclude that there is not a "significant possibility" that the agency will "find an adequate explanation for its actions on remand." *Standing Rock Sioux Tribe*, 985 F.3d at 1051 (cleaned up). The Court reasonably did so here. The Court determined that because HHS once again failed to ignore clear guidance from the Court and the D.C. Circuit regarding the importance of considering the effect of a section 1115 project on coverage, "the road to cur[ing] the deficiency . . . is, at best, a rocky one." Mem. Opin. at 58-59 (quoting *Gresham*, 363 F. Supp. 3d at 182); *cf. Comcast Corp. v. FCC*, 579 F.3d 1, 9 (D.C. Cir. 2009) (having "no trouble concluding . . . that vacatur is indicated by the first factor in *Allied-Signal*," where the Court "expressly instructed" the agency to consider a factor and the agency failed to do so).

8

As for the second *Allied-Signal* factor, Indiana argues that vacatur will disrupt beneficiaries' coverage by "forcing" the State to provide only HIP Basic benefits. Ind. Br. at 10-11. That argument is based on several incorrect premises. First, without the 2020 approval, the existing state plan does not require the State to move beneficiaries to HIP Basic. The better reading of the state plan is that, because premiums are no longer authorized, all beneficiaries receive HIP Plus benefits. *See* State Plan Amendment 15-0002-MM2, https://www.medicaid.gov/State-resource-center/Medicaid-State-Plan-Amendments/Downloads/IN/IN-15-0002-MM2.pdf (HIP Basic is "only available" for individuals with income up to and including 100% of FPL "who do not pay a contribution" to their POWER Account); State Plan Amendment 15-0003-MM3, https://www.medicaid.gov/State-resource-center/Medicaid-State-Plan-Amendments/Downloads/IN/IN-15-003-MM3.pdf (HIP Plus is for all individuals with income up to and including 133% of FPL "who make a contribution" to their POWER Account). Indeed, Indiana has been providing beneficiaries with HIP Plus benefits without requiring them to pay premiums since 2020.

Second, and more fundamentally, the state plan is not a document fixed in stone. Federal regulations recognize that a state plan will be amended routinely, including when necessary to reflect "changes in Federal law, regulations, policy interpretations, or *court decisions*." 42 C.F.R. § 430.12(c)(1)(i) (emphasis added). The regulations set forth a timeline for federal consideration to ensure prompt approval of amendments, *id*. § 430.16(a), and allow for retroactive application of approved amendments, *id*. § 430.20(b)(1) (permitting an amendment that provides additional services to eligible individuals to take effect as early as the first day of the quarter in which the state submitted the amendment), § 430.20(b)(3) (permitting an amendment not otherwise described to take effect on "a date requested by the State" and approved by CMS). Indiana does not claim—

nor could it—that it cannot amend its state plan to provide vision, dental, and chiropractic services, as well as TMJ surgery and bariatric surgery, to the entire HIP population. Thus, even if Indiana's reading of the state plan were correct, there is no reason that vacatur need cause a loss of benefits.[3]

Likewise, Indiana's argument that the Court understated the impact of vacating the waiver of NEMT and retroactive coverage is inaccurate. *See* Ind. Br. at 10. The Court focused on premiums because neither HHS nor Indiana "made arguments specific to the waivers of retroactive coverage or NEMT." Mem. Opin. at 60. And, the Court acknowledged that it could be complicated for Indiana to make operational changes to its Medicaid program but explained that other states have managed to "change course in the midst of active waivers of retroactive coverage and NEMT." *Id*. at 61.

Indeed, Indiana's new emphasis on the difficulties of providing NEMT and retroactive coverage is self-serving and overblown. Under the 2020 approval, Indiana was providing NEMT and retroactive coverage to a large number of individuals enrolled in HIP, AR 1576 (limiting the waiver of NEMT to the expansion population), 1577 (requiring retroactive coverage for pregnant women), meaning the State already has structures in place for providing those benefits that it could extend to the entire HIP population. To the extent that Indiana would need to amend its state plan to cover NEMT for the expansion population or alter its managed care contracts, *see* Ind. Br. at 12, as noted, those processes are common Medicaid implementation occurrences and are not so cumbersome as to overcome the presumption in favor of vacatur.

In sum, the Court acknowledged that vacatur could cause operational complications for the State, but determined that the inconvenience did not outweigh the harm to beneficiaries of allowing

---

[3] *Accord* Mem. Opin. at 26-27 (noting that, while state law mandates a six-month lockout for failure to pay premiums, Indiana has continued expansion coverage without that penalty in place).

the project to remain in place. Mem. Opin. at 61-62. None of Indiana's arguments come close to showing that the Court abused its discretion in reaching that conclusion.

## II.     The Remaining Stay Factors Do Not Favor A Stay.

Even if Indiana could make a strong showing of a likelihood of success on the merits, the balance of equities does not weigh in its favor.

First, Indiana has not established it will suffer irreparable harm absent a stay. This is a heavy burden. The party moving for a stay is required to demonstrate that the injury claimed is "certain and great . . . actual and not theoretical.'" *Campaign Legal Ctr. v. FEC*, No. 19-2336 (JEB), 2023 WL 6608997, at *2 (D.D.C. Feb. 1, 2023) (citation omitted); *Id.* ("[T]he movant must demonstrate that the injury is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.") (cleaned up). Indiana's harms amount to speculation. Primarily, the State relies on the "substantial time and effort" it predicts would be necessary to comply with the Court's order. But as it admits, much of those efforts are due to its "interpretation" that in the absence of a stay, it would need to transition currently enrolled HIP Plus members to HIP Basic. Ind. Br. at 12. As described above, maintaining HIP Plus coverage is consistent with the state plan and nothing in the Court's decision dictates otherwise. Therefore, this amounts to a "self-imposed cost" which cannot constitute irreparable harm. *Cuomo*, 772 F.2d at 977; *see also Athenex Inc. v. Azar*, No. 19-CV-00603, 2019 WL 4316139, at *1 (D.D.C. Sept. 6, 2019); *Humane Soc'y of U.S. v. Johanns*, No. 06-265, 2007 WL 1120404, at *11 (D.D.C. Apr. 13, 2007) (finding that the movant did not demonstrate irreparable harm in part because "many of the losses alleged by [the movant] can in fact be mitigated"). Indiana seeks to paint a picture of massive disruption in the absence of a stay. But much of that imagined disruption would be of the State's own doing.

11

For more than four years, expansion group beneficiaries have retained HIP Plus coverage and paid no premiums—that is the status quo.

Indiana also points to the efforts it would need to undertake to comply with the Medicaid Act without a stay. It gives reinstating retroactive coverage as an example, arguing that "if the waiver were reinstated on appeal, this significant expenditure of effort would be for naught." Ind. Br. at 13. But "the fact that an agency expends certain resources upon remand that are later decided to be unnecessary does not rise to the level of 'certain and great' irreparable harm." *Shays v. FEC*, 340 F. Supp. 2d 39, 51 (D.D.C. 2004). Moreover, Indiana states that reinstating retroactive coverage "would take at least 12 months," casting doubt on the extent of the immediate steps it plans to take in order to come into compliance with that provision of the Medicaid Act as well as the Court's order. Ind. Br. at 14.

Second, Indiana ignores the harm to Plaintiffs, other interested parties, and the public interest in the event of a stay. If granted a stay, Indiana offers to continue to pause premiums until it changes its mind and provides six weeks' notice. Ind. Br. at 13. That is what creates uncertainty, not this Court's decision. And while Indiana relies on the number of years that waivers of retroactive coverage and NEMT have been in effect to support its position, that Plaintiffs first filed this lawsuit in 2019 speaks to the many years they have gone without relief. Contrary to Indiana's assertions, "there is generally no public interest in the perpetuation of unlawful agency action." *W. Flagler Assocs. v. Haaland*, No. 21-cv-2192 (DLF), 2021 WL 9031913, at *2 (D.D.C. Nov. 24, 2021) (citation omitted).

### III. Plaintiffs Would Not Oppose A Limited Stay That Preserves An Imperfect Status Quo.

Indiana has not met its burden in seeking a stay. This Court correctly vacated the 2020 approval, and Indiana's parade of horribles in the absence of a stay is unfounded. That said,

Plaintiffs acknowledge that an imperfect status quo has emerged in Indiana. Medicaid enrollees have not paid premiums for several years but have received HIP Plus benefits. *See, e.g.*, Medicaid Section 1115 Eligibility and Coverage Demonstrations Monitoring Report – Part B Version 2.0 Indiana Healthy Indiana Plan at 4, https://www.medicaid.gov/medicaid/section-1115-demonstrations/downloads/in-healthy-indiana-plan-hip-dy-annul-rprt.pdf (explaining that Indiana has provided HIP Plus benefits to all enrollees since August 1, 2021). At the same time, Indiana has not been providing retroactive coverage or NEMT to portions of this population pursuant to the approval. However, with respect to NEMT, Indiana states that the expansion population is receiving NEMT through their managed care plans. Ind. Br. at 4. Accordingly, Plaintiffs believe that the Court could consider a limited stay that preserves this status quo. That would allow Indiana to postpone efforts to reintroduce retroactive coverage and NEMT for the pendency of the appeal but would prevent the State from re-imposing premiums or moving people to HIP Basic.

## CONCLUSION

The Court should deny Indiana's Motion.

//

| | |
|---|---|
| Dated: July 26, 2024 | Respectfully submitted, |
| | /s/ Jane Perkins |
| Ian Heath Gershengorn | Jane Perkins |
| Thomas J. Perrelli | Catherine McKee |
| Erica S. Turret | NATIONAL HEALTH LAW PROGRAM |
| JENNER & BLOCK | 1512 E. Franklin St., Ste. 110 |
| 1099 New York Ave., Suite 900 | Chapel Hill, NC 27514 |
| Washington, DC 20001 | (919) 968-6308 (x101) |
| (202) 639-6869 | perkins@healthlaw.org |
| TPerrelli@jenner.com | mckee@healthlaw.org |
| Igershengorn@jenner.com | |
| Eturret@jenner.com | Adam Mueller |
| | INDIANA JUSTICE PROJECT |
| *Counsel to National Health Law Program* | 1100 W 42nd St., Suite 200 |
| | Indianapolis, IN 46208 |
| | (317) 912-1135 ext. 800 |
| | amueller@injp.org |
| | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send an electronic notice to all authorized CM/ECF filers.

/s/ Jane Perkins
Jane Perkins

14